LANNY A. BREUER
Assistant Attorney General
Attorney for the United States
Acting Under Authority of 28 U.S.C. § 515

JACK SMITH
Chief, Public Integrity Section

M. KENDALL DAY
Deputy Chief
Virginia State Bar Member
m.kendall.day@usdoj.gov

MONIQUE ABRISHAMI
Trial Attorney
Florida State Bar Member
monique.abrishami@usdoj.gov

Public Integrity Section
Criminal Division
U.S. Department of Justice
1400 New York Avenue, NW, 12th Floor
Washington, D.C. 20005
Telephone (202) 514-1412
Facsimile (202) 514-3003

FREDERICK A. BATTISTA
Assistant U.S. Attorney
Maryland State Bar Member
Two Renaissance Square
40 N. Central Ave., Suite 1200
Phoenix, AZ 85004
Telephone (602) 514-7500
fred.battista@usdoj.gov

```
          ___ FILED      X  LODGED
          ___ RECEIVED ___ COPY

              OCT 0 5 2012

          CLERK U S DISTRICT COURT
             DISTRICT OF ARIZONA
          BY_____ DEPUTY
```

```
          ✓ FILED        ___ LODGED
          ___ RECEIVED   ___ COPY

              JAN 2 3 2013

          CLERK U S DISTRICT COURT
             DISTRICT OF ARIZONA
          BY_____ DEPUTY
```

# UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| United States of America, | NO. CR-12-1055-001-PHX-FJM (LOA) |
|---|---|
| Plaintiff, | |
| v. | **PLEA AGREEMENT** |
| Paul Ben Arredondo, | **(Felony Offenses)** |
| Defendant. | |

Plaintiff, United States of America, and defendant, PAUL BEN ARREDONDO, hereby agree to dispose of this matter on the following terms and conditions:

## 1.   PLEA

Defendant agrees to plead guilty to Count 2 of the Indictment charging him with a violation of Title 18, United States Code, Sections 1341 and 1346, Honest Services Mail Fraud, a Class C felony offense.  Defendant also agrees to waive indictment and plead guilty to Count

1 of the Information charging him with a violation of Title 18, United States Code, Section 1341,

Mail Fraud, a Class C felony offense.

## 2.   **MAXIMUM PENALTIES**

a.   A violation of 18 U.S.C. §§ 1341 and 1346 is punishable by a maximum fine of $250,000.00, or either twice the gross pecuniary gain derived by defendant from the offense or twice the pecuniary loss suffered by another person because of the offense, whichever sum is greater, Title 18, United States Code, Section 3571(d); a maximum term of imprisonment of twenty (20) years; a maximum period of supervised release of ~~five (5)~~ three (3) years; or all three combined. If probation is imposed, the maximum term of probation is five (5) years.

b.   A violation of 18 U.S.C. § 1341 is punishable by a maximum fine of $250,000.00, or either twice the gross pecuniary gain derived by defendant from the offense or twice the pecuniary loss suffered by another person because of the offense, whichever sum is greater, Title 18, United States Code, Section 3571(d); a maximum term of imprisonment of twenty (20) years; a maximum period of supervised release of ~~five (5)~~ three (3) years; or all three combined.

c.   Because the defendant is pleading guilty to multiple counts, he faces a maximum statutory fine of up to $500,000.00, or twice the gross pecuniary gain derived by the defendant, or twice the pecuniary loss suffered by another person, which sum, or combination of sums, is greater; a maximum statutory term of imprisonment of forty (40) years; a period of supervised release of ~~five (5)~~ three (3) years; or all three combined.

d.   According to the Sentencing Guidelines issued pursuant to the Sentencing Reform Act of 1984, the Court shall order defendant to:

(1)   make restitution to any victim of the offense pursuant to 18 U.S.C. § 3663 and/or 3663A, unless the Court determines that restitution would not be appropriate;

(2)   pay a fine pursuant to 18 U.S.C. § 3572, unless the Court finds that a fine would not be appropriate;

1          (3)    serve a term of supervised release when required by statute or when a

2  sentence of imprisonment of more than one year is imposed (with the understanding that the

3  Court may impose a term of supervised release in all other cases); and

4          (4)    pay upon conviction a $100 special assessment for each felony count to

5  which defendant pleads guilty pursuant to 18 U.S.C. § 3013(a)(2)(A).

6

7  **3.**      **AGREEMENTS REGARDING SENTENCING**

8        a.     The defendant is aware that a sentence will be imposed by the Court after

9  considering the Federal Sentencing Guidelines and Policy Statements promulgated by the U.S.

10  Sentencing Commission in the Guidelines Manual (2011) (hereinafter "Sentencing Guidelines"

11  or "U.S.S.G."), and the factors set forth in U.S.C. § 3553(a). The defendant understands that the

12  Court will compute an advisory sentence under the Sentencing Guidelines and that the applicable

13  Guidelines will be determined by the Court relying in part on the results of a Pre-Sentence

14  Investigation by the U.S. Probation Office, which investigation will commence after the

15  defendant's plea of guilty has been entered.  The defendant is also aware that, under certain

16  circumstances, the Court may depart from the advisory sentencing guideline range that it has

17  computed, and may raise that advisory sentence up to and including the statutory maximum

18  sentence or lower that advisory sentence.  The defendant is further aware and understands that

19  the Court is required to consider the advisory guideline range determined under the Sentencing

20  Guidelines, but is not bound to impose that sentence; the Court is permitted to tailor the ultimate

21  sentence in light of other statutory concerns, and such sentence may be either more severe or less

22  severe than the Sentencing Guidelines' advisory sentence.  Knowing these facts, the defendant

23  understands and acknowledges that the Court has the authority to impose any sentence within

24  and up to the statutory maximum authorized by law for the offenses identified in paragraph 2 and

25  that the defendant may not withdraw his plea of guilty solely as a result of the sentence imposed.

26        b.     The United States reserves the right to inform the Court and the U.S. Probation

27  Office of all facts pertinent to the sentencing process, including all relevant information

28  concerning the offenses committed, whether charged or not, as well as concerning the defendant

and the defendant's background.   Subject only to the express terms of any agreed-upon sentencing recommendations contained in this Plea Agreement, the United States further reserves the right to make any recommendation as to the quality and quantity of punishment.

c.   The defendant is aware that any estimate of the probable sentence or the probable sentencing range relating to the defendant pursuant to the advisory Sentencing Guidelines that the defendant may have received from any source, including defense counsel, is only a prediction and not a promise, and that any such estimate is not binding on the United States, the U.S. Probation Office, or the Court, except as expressly provided in this Plea Agreement.

d.   <u>Sentencing Guidelines Stipulations</u>   Pursuant to Federal Rule of Criminal Procedure 11(c)(1)(B), and to assist the Court in determining the appropriate sentence, the parties stipulate to the following:

### Count 2 (Indictment) - Honest Services Mail Fraud

| | | |
|---|---|---|
| i. | U.S.S.G. § 2C1.1(a)(1) – Base Offense Level for Honest Services Mail Fraud. | **14** |
| ii. | U.S.S.G. § 2C1.1(b)(3) – Enhancement for Offense Involving an Elected Official. | **+4** |
| Offense Level | | **18** |

The government reserves the right to argue that a two-level enhancement applies for the value of the bribe exceeding $5,000.  U.S.S.G. § 2C1.1(a)(b)(2).  If it applies, the total offense level for this count is 20.  The defendant reserves the right to argue that this two-level enhancement does not apply.

### Count 1 (Information) - Mail Fraud

| | | |
|---|---|---|
| i. | U.S.S.G. § 2B1.1(a)(1) – Base Offense Level for Mail Fraud. | **7** |
| ii. | U.S.S.G. § 2B1.1(b)(1)(D) – Offense Level Enhancement For Loss of More than $30,000 | **+6** |
| iii. | U.S.S.G. § 2B1.1(b)(2)(A) – Offense Level Enhancement For More than Ten Victims | **+2** |
| iv. | U.S.S.G. § 2B1.1(b)(9) – Offense Level Enhancement For Misrepresentation Involving a Charity | **+2** |

4

v.     U.S.S.G. § 3B1.3 – Offense Level Enhancement          **+2**
       For Abuse of a Position of Trust

Mail Fraud Total Offense Level                              **19**

Pursuant to U.S.S.G. § 3D1.2(d), these two separate offenses are not considered a single group. Therefore, pursuant to U.S.S.G. § 3D1.4, the highest offense level should be increased by two levels. If the Court applies the two-level enhancement for bribes totaling more than $5,000, the total applicable offense level for the grouped offenses will be 22. If the Court does not apply the two-level enhancement, the total applicable offense level for the grouped offenses will be 21.

e.     Acceptance of Responsibility  Provided that the defendant clearly demonstrates acceptance of responsibility to the satisfaction of the United States, through the defendant's allocution and subsequent conduct prior to the imposition of sentence, the United States agrees that a two-level reduction would be appropriate, pursuant to U.S.S.G § 3E1.1(a).

The United States, however, may oppose any adjustment for acceptance of responsibility if the defendant:

i.     fails to admit a complete factual basis for the plea at the time the defendant is sentenced or at any other time;

ii.    challenges the adequacy or sufficiency of the factual basis for the guilty plea at any time after the plea is entered;

iii.   denies involvement in the offenses;

iv.    gives material conflicting statements about that involvement or is untruthful with the Court, the United States or the probation office;

v.     fails to give complete and accurate information about the defendant's financial status to the U.S. Probation Office;

vi.    obstructs or attempts to obstruct justice, prior to sentencing;

vii.   has engaged in conduct prior to signing this Plea Agreement which reasonably could be viewed as obstruction or an attempt to obstruct justice, and has failed to fully disclose such conduct to the United States prior to signing this Plea Agreement;

5

viii.    fails to appear in Court as required;

ix.    after signing this Plea Agreement, engages in additional criminal conduct; or

x.    attempts to withdraw the plea of guilty.

If the defendant has accepted responsibility as described above, and the defendant's offense level is sixteen or greater, the United States agrees that an additional one-level reduction would be appropriate, pursuant to U.S.S.G. § 3E1.1(b), because the defendant has assisted authorities by providing timely notice of the defendant's intention to enter a plea of guilty, thereby permitting the United States to avoid preparing for trial and permitting the Court to allocate its resources efficiently.

f.    <u>Criminal History of Defendant</u>  Defendant understands that his Criminal History Category will be determined by the Court after completion of a Presentence Investigation Report by the U.S. Probation Office.  Based upon the information now available to the United States (including representations by the defense), defendant's Criminal History Category is estimated to be Category I.

g.    The parties agree that the defendant may seek a sentence outside of the applicable Guidelines range and suggest that the Court consider a sentence outside of the applicable Guidelines range, based upon the factors to be considered in imposing a sentence pursuant to Title 18, United States Code, Section 3553(a).

h.    In support of any variance argument, the defendant agrees to provide to the United States reports, motions, memoranda of law and documentation of any kind on which the defendant intends to rely at sentencing not later than seven days before sentencing.  Any basis for sentencing with respect to which expert reports, motions, memoranda of law and documentation have not been provided to the United States at least seven days before sentencing shall be deemed waived.  If the defendant obtains letters of support from third parties less than seven days before sentencing, he agrees to provide such documents to the United States at least 48 hours before sentencing.

i.        Sentencing Recommendation by the United States   The government agrees to recommend a sentence at the low end of the applicable Guidelines Range determined by the Court at the time of sentencing.

j.        Court Not Bound by Plea Agreement   It is understood that pursuant to Federal Rules of Criminal Procedure 11(c)(1)(B) and 11(c)(3)(B) the Court is not bound by the above stipulations, either as to questions of fact or as to the parties' determination of the applicable Guidelines range, or other sentencing issues.   In the event that the Court considers any Guidelines enhancements, departures, or calculations different from any stipulations contained in this Plea Agreement, or contemplates a sentence outside the Guidelines range based upon the general sentencing factors listed in Title 18, United States Code, Section 3553(a), the parties reserve the right to answer any related inquiries from the Court.

k.        Defendant's Release/Custody Status Pending Sentencing   The defendant understands that the final decision regarding the defendant's detention will be made by the Court at the time of the defendant's plea of guilty. The United States reserves the right to argue that the defendant should be detained pending sentencing.

l.        Stipulation Regarding Restitution   Pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C), and 18 U.S.C. § 3663 and/or 3663A, the parties agree that restitution shall be addressed at sentencing in the following manner: (1) all known contributors to the Arredondo Scholarship Fund (the "Fund") will be notified by the United States that they may be a victim in this case and eligible for restitution; (2) the parties will calculate the total amount of benefits paid to all students by the Fund; (3) the parties will stipulate that at least $49,750 is the total amount of benefits paid by the Fund to persons related to the defendant or the defendant's spouse at the time they received such benefits, and calculate the total amount prior to sentencing; (4) the parties will determine what percentage of the total amount paid to all students went to persons related to the defendant or the defendant's spouse at the time they received the benefits (the "Percentage"); and (5) at the time of sentencing, defendant shall be ordered to pay restitution to victims who have made reasonably documented claims for restitution in an amount which is equal to the Percentage of the total of their donation(s).

7

m.    <u>Resignation From Public Office</u>  The defendant agrees to resign from his current position as a Member of the State of Arizona House of Representatives, effective on or before the date of entry of the defendant's guilty plea pursuant to this Plea Agreement.

## 4.    **AGREEMENT TO DISMISS AND NOT PROSECUTE**

a.    Pursuant to Fed. R. Crim. P. 11(c)(1)(A), the United States shall move to dismiss Counts 1, 3, 4 and 5 of the Indictment after defendant has been sentenced on Count 2 of the Indictment and Count 1 of the Information.

b.    If the Court accepts the defendant's plea of guilty and the defendant fulfills each of the terms and conditions of this Plea Agreement, the United States agrees that it will not further prosecute the defendant or Ruth Ann Arredondo for any crimes described in the "Factual Basis" at paragraph 11 below, or for any conduct of the defendant or Ruth Ann Arredondo related to the present investigation now known to the Public Integrity Section and the United States Attorney's Office for the District of Arizona, and to the law enforcement agents working with the Public Integrity Section and United States Attorney's Office for the District of Arizona on the present investigation.  Nothing in this Plea Agreement is intended to provide any limitation of liability arising out of any acts of violence.

c.    This agreement applies to the Public Integrity Section and the United States Attorney's Office for the District of Arizona and does not, in any manner, restrict the actions of the United States in any other district or bind any other United States Attorney's Office.

## 5.    **REINSTITUTION OF PROSECUTION**

If defendant's guilty plea or Plea Agreement is rejected, withdrawn, vacated, or reversed at any time, this agreement shall be null and void, the United States shall be free to prosecute defendant for all crimes of which it then has knowledge, and any charges that have been dismissed because of this Plea Agreement shall automatically be reinstated.  In such event, defendant waives any and all objections, motions, and defenses based upon the Statute of Limitations, the Speedy Trial Act, or constitutional restrictions in bringing later charges or

1    proceedings. Defendant understands that any statements made at the time of defendant's change

2    of plea or sentencing may be used against defendant in any subsequent hearing, trial, or

3    proceeding subject to the limitations of Fed. R. Evid. 410.

4

5    **6.      <u>WAIVER OF DEFENSES AND APPEAL RIGHTS</u>**

6            a.      Defendant is aware that he has the right to challenge his sentence and plea of guilty

7    on direct appeal. Defendant is also aware that he may, in some circumstances, be able to argue

8    that his plea of guilty should be set aside, or sentence set aside or reduced, in a collateral

9    challenge (such as pursuant to a motion under 28 U.S.C. § 2255).  Knowing that, and in

10   consideration of the concessions made by the United States in this Plea Agreement, the

11   defendant knowingly and voluntarily waives: (1) any and all motions, defenses, probable cause

12   determinations, and objections that he could assert to the indictment or information; and (2) any

13   right to file an appeal, any collateral attack, and any other writ or motion that challenges the

14   conviction, an order of restitution or forfeiture, the entry of judgment against him, or any aspect

15   of his sentence, including the manner in which the sentence is determined, including but not

16   limited to any appeals under 18 U.S.C. § 3742 and motions under 28 U.S.C. §§ 2241 and 2255,

17   except to the extent that the Court sentences the defendant to a period of imprisonment either

18   longer than the statutory maximum or in excess of the applicable Guidelines range determined

19   by the Court at the time of sentencing.  The defendant acknowledges that unless the Court

20   sentences the defendant to a term of imprisonment longer than the statutory maximum or in

21   excess of the applicable Guidelines range determined by the Court at the time of sentencing, this

22   waiver shall result in the dismissal of any appeal, collateral attack, or other motion defendant

23   might file challenging the conviction, order of restitution or forfeiture, or sentence in this case.

24           b.      Defendant further understands that nothing in this Plea Agreement shall affect the

25   Public Integrity Section's right and/or duty to appeal as set forth in Title 18, United States Code,

26   Section 3742(b). However, if the United States appeals the defendant's sentence pursuant to

27   Section 3742(b), the defendant shall be released from the above waiver of appellate rights. By

28   signing this Plea Agreement, the defendant acknowledges that he has discussed the appeal

waiver set forth in this Plea Agreement with his attorney. The defendant further agrees, together with the United States, to request that the Court enter a specific finding that the waiver of his right to appeal the sentence to be imposed in this case was knowing and voluntary.

c.     Defendant's waiver of rights in paragraph 6(a) shall not apply to appeals or challenges based on new legal principles in cases from the United States Court of Appeals for the Ninth Circuit or the United States Supreme Court decided after the date of this Plea Agreement that are held by the United States Court of Appeals for the Ninth Circuit or the United States Supreme Court to have retroactive effect.

## 7.     **DISCLOSURE OF INFORMATION**

a.     The United States retains the unrestricted right to provide information and make any and all statements it deems appropriate to the U.S. Probation Office and to the Court in connection with the case.

b.     Any information, statements, documents, and evidence that the defendant provides to the United States pursuant to this agreement may be used against the defendant at any time, unless the Court refuses to accept the plea agreement for reasons independent of the conduct or allocution of the defendant.

c.     Defendant shall cooperate fully with the U.S. Probation Office. Such cooperation shall include providing complete and truthful responses to questions posed by the U.S. Probation Office including, but not limited to, questions relating to:

i.     criminal convictions, history of drug abuse, and mental illness; and

ii.     financial information, including present financial assets or liabilities that relate to the ability of defendant to pay a fine or restitution.

## 8.     **FORFEITURE, CIVIL, AND ADMINISTRATIVE PROCEEDINGS**

Nothing in this agreement shall be construed to protect the defendant from administrative or civil forfeiture proceedings or prohibit the United States from proceeding with and/or initiating an action for civil forfeiture. Pursuant to 18 U.S.C. § 3613, all monetary penalties,

1  including restitution imposed by the Court, shall be due immediately upon judgment and subject
2  to immediate enforcement by the United States.  If the Court imposes a schedule of payments,
3  the schedule of payments shall be merely a schedule of minimum payments and shall not be a
4  limitation on the methods available to the United States to enforce the judgment.
5
6  **9.**     **COMPLETE AGREEMENT**
7       a.     No other agreements, promises, understandings, or representations have been made
8  by the parties or their counsel other than those contained in writing herein, nor will any such
9  agreements, promises, understandings, or representations be made binding unless committed to
10  writing and signed by the defendant, defense counsel, and a prosecutor for the Public Integrity
11  Section.
12       b.     The defendant further understands that this Plea Agreement is binding only upon
13  the Public Integrity Section, Criminal Division, United States Department of Justice, and the
14  United States Attorney's Office for the District of Arizona.  This Plea Agreement does not bind
15  the Civil Division or any other United States Attorney's Office, nor does it bind any other state,
16  local, or federal prosecutor.  It also does not bar or compromise any civil, tax, or administrative
17  claim pending or that may be made against the defendant.
18
19  **10.**    **ELEMENTS OF OFFENSE**
20       **Count 2 (Indictment) – Honest Services Mail Fraud**
21       Defendant understands that the essential elements of Honest Services Mail Fraud, in
22  violation of 18 U.S.C. §§ 1341 and 1346, are as follows:
23       First, the defendant devised or knowingly participated in a scheme or plan to deprive the
24  citizens of the City of Tempe and the State of Arizona of their right of honest services.
25       Second, the scheme or plan consisted of a bribe in exchange for the defendant's services.
26  The "exchange" may have been express or may have been implied from all the surrounding
27  circumstances.
28

11

1     <u>Third</u>, the defendant acted with the intent to defraud by depriving the citizens of the City

2     of Tempe and the State of Arizona of their right of honest services.

3     <u>Fourth</u>, the defendant's act was material; that is, it had a natural tendency to influence,

4     or was capable of influencing, an entity's acts.

5     <u>Fifth</u>, the defendant used, or caused someone to use, the mails to carry out or to attempt

6     to carry out the scheme or plan.

7     **Count 1 (Information) – Mail Fraud**

8     Defendant understands that the essential elements of Mail Fraud, in violation of 18 U.S.C.

9     § 1341, are as follows:

10    <u>First</u>, the defendant devised or knowingly participated in a scheme or plan for obtaining

11    money or property by knowingly making false promises or statements, or knowingly omitting

12    certain facts.

13    <u>Second</u>, the statements made or facts omitted were material; that is, they had a natural

14    tendency to influence, or were capable of influencing, a person to part with money or property.

15    <u>Third</u>, the defendant acted with the intent to defraud.

16    <u>Fourth</u>, the defendant used, or caused to be used, the mails to carry out or attempt to carry

17    out an essential part of the scheme.

18

19    **11.**    **<u>FACTUAL BASIS</u>**

20    **Count 2 (Indictment) – Honest Services Mail Fraud**

21    Defendant admits that the following facts are true and that if this matter were to proceed

22    to trial the United States could prove the following facts beyond a reasonable doubt:

23    a.    The City of Tempe ("Tempe") is a political subdivision within the State of

24    Arizona.  Tempe was governed by a local government, called the City Council, that was

25    comprised of one mayor and six city councilmembers.

26    b.    Tempe's City Council was vested by the city's charter with all policy-making

27    powers of the city, as well as the exercise and performance of all duties and obligations imposed

28

1    on the city by law. The City Council's responsibilities include passing ordinances that convey
2    or lease city property.

3         c.    The Arizona State Legislature consists of a Senate and a House of Representatives.
4    Members of the House of Representatives are elected from districts within the State of Arizona
5    by the qualified electors of the district to serve two-year terms, with a term limit of four
6    consecutive terms.

7         d.    Defendant PAUL BEN ARREDONDO (hereinafter the "defendant") was a
8    councilmember in Tempe and served in that capacity for approximately 16 years, until in or
9    about July 2010. The defendant was elected to the House of Representatives of the Arizona
10   State Legislature in or about November 2010.

11        e.    Company A was a fictitious company whose business objective was purportedly
12   to develop real estate projects, including within the City of Tempe. Representatives of Company
13   A were, in fact, undercover agents with the FBI.

14        f.    From in or about February 2009 to in or about November 2010, the defendant
15   solicited, agreed to accept, and accepted from representatives of Company A things of value with
16   the intent to be influenced in the performance of his official duties, first as a councilmember in
17   Tempe and later in his capacity as an elected member of the Arizona House of Representatives.
18   In so doing, the defendant acted with the intent to defraud by depriving the citizens of the City
19   of Tempe and the State of Arizona of their right of honest services. The defendant's acts in
20   exchange for the bribe, as set forth below, had a natural tendency to influence the acts of the City
21   of Tempe.

22        g.    The things of value the defendant solicited and accepted included, but were not
23   limited to, the following:

24            (1)    Tickets to college and professional sporting events, including four tickets
25   to an American League Championship Series game between the New York Yankees and the Los
26   Angeles Angels in October 2009; two tickets to an Arizona Cardinals game in September 2009;
27   eighteen tickets to various Arizona Diamondback baseball games in 2010; and two tickets to a
28   Duke-Michigan State college basketball game in November 2010.

(2)     Tables at charity events in February and March 2009, with the understanding that the defendant would invite people of his choice to fill the seats at each table.

h.     The official actions the defendant agreed to take in exchange for the things of value included, but were not limited to, the following:

(1)     The defendant provided confidential information to representatives of Company A, including on or about June 25, 2009, when the defendant provided confidential price information to a representative of Company A, advising him that Tempe would be willing to accept a price of $15 per square foot and suggesting that Company A maximize its chances of acquiring the city-owned property by proposing a contingency contract.

(2)     The defendant used his position as a councilmember to influence the decisions of other Tempe officials in ways that were favorable to Company A, including on December 9, 2009, when the defendant confirmed to representatives of Company A that he had spoken with personnel in Tempe's Economic Development Department to persuade an official to support Company A's project.

(3)     The defendant contacted various Tempe councilmembers and City offices to facilitate Company A's efforts to win approval for its project, encouraging those councilmembers and offices to support Company A's project, obtaining information for Company A, and setting up meetings and phone calls between Tempe officials and Company A.

(4)     Following the defendant's election to the Arizona House of Representatives, he assured representatives of Company A that the defendant, as well as an incoming Tempe councilmember, would continue to support Company A's project, telling them, "You guys will ask, you guys will have.  I don't know how else to say it.  We'll be just fine because not only we're covered at the city, we're covered now at the state."

(5)     At no time during the defendant's interactions with city officials or other councilmembers about Company A did he disclose the fact that he had received anything of value from representatives of Company A.

i.     On or about July 1, 2010, the defendant, for the purpose of executing the above-described scheme and artifice to defraud and deprive, caused eighteen tickets to Arizona

14

1  Diamondbacks home baseball games to be mailed via FedEx to the defendant's home in Tempe,
2  Arizona.

3      **Count 1 (Information) – Mail Fraud**

4      Defendant admits that the following facts are true and that if this matter were to proceed
5  to trial the United States could prove the following facts beyond a reasonable doubt:

6      j.      In 2001, the defendant established the Arredondo Scholarship Fund (the "Fund")
7  and continued to operate the Fund through at least 2011.

8      k.      The defendant solicited and received contributions to the Fund, both directly and
9  through others, from more than ten individuals and entities in and around Tempe, Arizona.

10     l.      To raise money, goods, and services for the Fund, including airplane tickets
11  donated by major airlines, defendant knowingly told prospective donors that the Fund would pay
12  for college fees and books for "average" students, assuring donors that Fund payments would
13  not go to those "whose parents have saved a college fund" or otherwise qualified for
14  scholarships.

15     m.      The defendant never told prospective donors that a portion of the money received
16  by the Fund would be used to pay for tuition, fees, and books of his own relatives. The
17  defendant knew and believed that, had donors known that he would use a portion of their
18  donations to pay educational expenses for his own relatives, the donors may not have contributed
19  money, or other things of value such as airline tickets to be used in fundraising, to the Fund.
20  This was an ongoing material omission of fact knowingly made by defendant in furtherance of
21  the scheme.

22     n.      From 2001 through 2011, the defendant caused the Fund to pay approximately
23  $49,750 on behalf of seven of his relatives to three different educational institutions in Arizona.
24  Although the Fund also gave scholarships to students with no familial relation to the defendant,
25  a significant percentage of the Fund's payments to these institutions were made to benefit the
26  defendant's relatives. For example, from the 2002-2003 school year to the 2011-2012 school
27  year, the Fund paid approximately $81,200 to Arizona State University ("ASU"), and this
28  conduct was known to the defendant. Of that amount, $39,250 benefitted six of the defendant's

relatives, meaning that approximately 48 percent of money given for the use or benefit of students at ASU was directed to the defendant's relatives. The remaining $41,950 was spent on 20 other students who had no known familial relationship to the defendant at the time.

p.     On or about August 1, 2011, the Fund paid $6,000 to ASU in Tempe, Arizona, on behalf of four students for the Fall Semester of 2011. Three of the four students were relatives of the defendant, and they received $5,000 of the $6,000 total payment. In order to make the payment in furtherance of the subject scheme, a letter was written and sent through the United States Postal Service to ASU on behalf of the Fund, with the defendant's knowledge, which directed how the subject payments should be allocated. The letter stated, "The students are not the children nor any other direct relatives" of the administrators of the Fund. The letter expressly named defendant as one of the Fund's administrators.

q.     The preceding statements are summaries, made for the purpose of providing the Court with a factual basis for defendant PAUL BEN ARREDONDO's guilty pleas. They do not include all of the facts known to defendant ARREDONDO concerning criminal activity in which he and/or others engaged, nor does it contain all the facts which the Government could prove in a trial against defendant.

r.     Defendant shall swear under oath to the accuracy of these statements and, if defendant should be called upon to testify about these matters in the future, any intentional material inconsistencies in defendant's testimony may subject defendant to additional penalties for perjury or false swearing, which may be enforced by the United States under this agreement.

## APPROVAL AND ACCEPTANCE OF DEFENDANT

I have personally read the entire plea agreement and reviewed the entire agreement with my attorney. I understand each of its provisions and I voluntarily agree to it.

I have discussed the case and my constitutional and other rights with my attorney. I understand that by entering my pleas of guilty I shall waive my rights to plead not guilty, to trial by jury, to confront, cross-examine, and compel the attendance of witnesses, to present evidence in my defense, to remain silent and refuse to be a witness against myself by asserting my

privilege against self-incrimination, all with the assistance of counsel, and to be presumed innocent until proven guilty beyond a reasonable doubt.

I agree to enter my guilty plea as indicated above on the terms and conditions set forth in this agreement.

I have been advised by my attorney of the nature of the charges to which I am entering my guilty plea. I have further been advised by my attorney of the nature and range of the possible sentence and that my ultimate sentence shall be determined by the Court after consideration of the advisory Sentencing Guidelines.

My guilty plea is not the result of force, threats, assurances, or promises, other than the promises contained in this agreement. I voluntarily agree to the provisions of this agreement and I agree to be bound according to its provisions.

I understand that if I am granted probation or placed on supervised release by the Court, the terms and conditions of such probation/supervised release are subject to modification at any time. I further understand that if I violate any of the conditions of my probation/supervised release, my probation/supervised release may be revoked and upon such revocation, notwithstanding any other provision of this agreement, I may be required to serve a term of imprisonment or my sentence otherwise may be altered.

This written plea agreement contains all the terms and conditions of the plea.

I further agree that promises, including any predictions as to the Sentencing Guideline range or to any Sentencing Guideline factors that will apply, made by anyone (including my attorney) that are not contained within this written plea agreement, are null and void and have no force and effect.

I am satisfied that my defense attorney has represented me in a competent manner.

I fully understand the terms and conditions of this plea agreement. I am not now using or under the influence of any drug, medication, liquor, or other intoxicant or depressant that would impair my ability to fully understand the terms and conditions of this plea agreement.

1

2

3  _10 - 5 - 12_
   Date                              PAUL BEN ARREDONDO
4                                    Defendant

5

6              **APPROVAL OF DEFENSE COUNSEL**

7       I have discussed this case and the plea agreement with my client in detail and have

8  advised defendant of all matters within the scope of Fed. R. Crim. P. 11, the constitutional and

9  other rights of an accused, the factual basis for and the nature of the offense to which the guilty

10 pleas will be entered, possible defenses, and the consequences of the guilty plea, including the

11 maximum statutory sentence possible.  I have further discussed the concept of the advisory

12 Sentencing Guidelines with defendant.  No assurances, promises, or representations have been

13 given to me or to defendant by the United States or any of its representatives that are not con-

14 tained in this written agreement.  I concur in the entry of the pleas as indicated above and that

15 the terms and conditions set forth in this agreement are in the best interests of my client.  I agree

16 to make a bona fide effort to ensure that the guilty plea is entered in accordance with all the

17 requirements of Fed. R. Crim. P. 11.

18

19 _10/5/12_
   Date
20                                   Jean-Jacques Cabou
                                     Lee Stein
21                                   Attorneys for Defendant

22

23

24

25

26

27

28

1

## APPROVAL OF THE UNITED STATES

2    I have reviewed this matter and the plea agreement. I agree on behalf of the United States

3 that the terms and conditions set forth herein are appropriate and are in the best interests of

4 justice.

5                                               LANNY A. BREUER
                                                Assistant Attorney General
6                                               Attorney for the United States
                                                Acting Under Authority of 28 U.S.C. § 515
7
                                                JACK SMITH
8                                               Chief, Public Integrity Section

9    __10/5/12__
10   Date                                       _____
                                                M. KENDALL DAY
11                                              Deputy Chief

12                                              MONIQUE T. ABRISHAMI
                                                Trial Attorney
13                                              Public Integrity Section
                                                Criminal Division
14                                              U.S. Department of Justice

15   __10/5/12__
     Date                                       _____
16                                              FREDERICK A. BATTISTA
                                                Assistant U.S. Attorney
17                                              District of Arizona

18

19

## ACCEPTANCE BY THE COURT

20

21

22   _____                         _____
     Date                                       FREDERICK J. MARTONE
23                                              United States District Judge

24

25

26

27

28

19